UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
KENNETH T. CHAVEZ, on behalf of himself :
and all others similarly situated, :
: **REPORT AND**
: **RECOMMENDATION**
Plaintiff, :
: 20-CV-845 (AMD)(PK)
-against- :
:
25 JAY STREET LLC and NORTH HENRY :
PARTNERS LLC d/b/a HENRY NORMAN :
HOTEL, :
: x
Defendants.
-------------------------------------------------------------

**Peggy Kuo, United States Magistrate Judge:**

Kenneth T. Chavez ("Plaintiff") brought this action against 25 Jay Street LLC and North Henry Partners LLC d/b/a Henry Norman Hotel (collectively, "Defendants") for violations of (1) Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; (2) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; the New York Civil Rights Law ("NYCRL"), N.Y. Civ. Rights Law § 40; and (4) the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-100 *et seq.* (*See* "Compl.," Dkt. 1.) Plaintiff filed a Second Motion for Default Judgment against the Defendants. (the "Motion," Dkt. 11.) The Honorable Ann M. Donnelly referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, the undersigned respectfully recommends that the Motion be GRANTED in part and DENIED in part.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.    Factual Background**

The following facts are taken from the Complaint, counsel's Affirmation in Support of Motion for Default Judgment ("Segal Aff.," Dkt. 11-2), and Plaintiff's counsel's statements at the inquest held before the undersigned on January 26, 2021.

1

Plaintiff is a uniped and amputee who must use a wheelchair or other motorized mobility device. (Compl. ¶ 10.) He is a resident of New York County, New York. (*Id.* ¶ 9.)

The Defendants are New York limited liability corporations that own, operate, and/or manage Henry Norman Hotel in Brooklyn, New York (the "Hotel"). (*Id.* ¶¶ 11-12.) Defendants, directly or through a third party, own, operate, maintain, and control the Hotel's website, www.henrynormanhotel.com (the "Website"). (*Id.* ¶¶ 13, 37.) The Website describes the Hotel and its accommodations and allows individuals to make online reservations. (*Id.* ¶¶ 1, 37.)

Prior to filing the Complaint, Plaintiff visited the Website "to learn about accessible features of the Hotel and in order to assess whether he could reserve an accessible room at the Hotel." (*Id.* ¶ 38.) Plaintiff has at times "had no place to live" and when he visited the Website, he "was in and out of places" and looking for a place to stay. (Inquest Tr. at 8:20-9:2.)

Plaintiff was unable to determine whether he could reserve a room that met his accessibility needs because the Website did not comply with the ADA's requirements. (Compl. ¶ 38.) The Website's homepage was "barren as to any accessibility features of the Hotel and its common areas." (*Id.* ¶ 40.) While it offered links to reserve a room, there was "literally no information about the room's accessibility features." (*Id.* ¶ 40.) "If you click on the link entitled 'Book Now' and access the availability of rooms on particular dates and see a list of available rooms on that date[,] no accessibility information or accessibility details for each type of available room are displayed." (*Id.*) The Website did not have information about whether the Hotel's rooms contained accessibility features "including but not limited to roll in showers or bathtubs, built in seating, grab bars, lowered sinks, wrapped pipes, sink and door hardware, or sufficient maneuvering space [] within the room." (*Id.* at. ¶ 41.) The Website also lacked any information about the accessibility of the Hotel's common areas and amenities, including "whether the Hotel is accessible in accordance with the 1991 Standards, or if not, the ways in which it is not with regard to the Hotel's entrance, the registration desk, recreational

facilities, the restaurants, the parking areas, business center and the routes to and from all of the aforementioned to and from each other…." (*Id.* ¶ 42.)

Defendants could modify the Website to include this information without undue burden. (*Id.* ¶ 49.) The Website is accessible to individuals in New York State and throughout the United States. (*Id.* ¶ 47.)

Because the Website lacked information about the accessibility of its rooms and common areas, Plaintiff alleges that he was denied equal access to the goods and services of the Hotel and Website. (*Id.* ¶¶ 18-19.)

## II. Procedural Background

Plaintiff filed the Complaint on February 17, 2020. Plaintiff served a Summons and copy of the Complaint on both Defendants via the New York Secretary of State consistent with N.Y. Bus. Corp. Law § 306(b). (Dkts. 6, 7.) After neither Defendant answered or otherwise responded to the Complaint, Plaintiff requested a certificate of default on May 19, 2020 (Dkt. 8), and the Clerk entered default against Defendants on May 26, 2020 (Dkt. 9). Plaintiff thereafter moved for default judgment. (Dkt. 10.) Plaintiff did not attach a copy of the Complaint to the default judgment motion and did not serve the Defendants at their last known business address. (*See* Dkt. Order dated January 10, 2021.) Plaintiff filed a second Motion for Default Judgment on January 13, 2021. (Dkt. 11.) Plaintiff sent a copy of the Motion and all its attachment to the Defendants at their last known address. (*See* Dkt. 11-7.)

The undersigned held an inquest by telephone on January 26, 2021, at which Plaintiff appeared through counsel and Defendants did not appear. Plaintiff withdrew his class allegations. (Inquest Tr. at 9:4-14.)

## DISCUSSION

### I. Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). "[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). A plaintiff must take several steps before the court will grant default judgment. The plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). The court "may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations omitted). The plaintiff must establish compliance with the procedural requirements of Local Civ. Rules 7.1 and 55.2.

The court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-06476 (ARR)(PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020). The Plaintiff

must similarly establish entitlement to injunctive relief. *Dollar Tree Stores, Inc. v. Serraty*, No. 16-CV-6818 (DRH)(AYS), 2018 WL 1180165, at *12 (E.D.N.Y. Feb. 14, 2018), *R&R adopted*, 2018 WL 1175159 (E.D.N.Y. Mar. 6, 2018). A court may "issue an injunction on a motion for default judgment upon a showing by the moving party that it is entitled to injunctive relief under the applicable statute, and that it meets the prerequisites for the issuance of an injunction." *United States v. Thomas*, No. 18-CV-1104 (PKC)(LB), 2019 WL 121678, at *6 (E.D.N.Y. Jan. 7, 2019) (quoting *Kennedy v. Medgen, Inc.*, No. 14-CV-5843 (ADS)(AYS), 2016 WL 6585812, at *5 (E.D.N.Y. Apr. 19, 2016)).

"The court may conduct hearings ... when, to enter or effectuate judgment, it needs to ... establish the truth of any allegation by evidence [or] investigate any other matter." Fed. R. Civ. P. 55(b)(2).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established ...." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state and local law claims under 28 U.S.C. § 1367. The Court also has jurisdiction over Plaintiff's request for declaratory judgment through 28 U.S.C. § 2201.

### B. Service on the Defendants

Plaintiff properly served both Defendants by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 6, 7.)

### C. Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Plaintiff alleged that Defendants are New York limited liability corporations (Compl. ¶¶ 11-12), and therefore the court's exercise of jurisdiction over them is proper.

## III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

Plaintiff filed the following documents in support of the Second Motion for Default Judgment: a copy of the Complaint (Dkt. 11-1), an Affidavit (Dkt. 11-2), the Certificate of Default (Dkt 11-3), a Memorandum of Law (Dkt. 11-4), a statement for legal fees (Dkt. 11-5), a proposed judgment (Dkt. 11-6), and an affidavit of service (Dkt. 11-7). These documents comply with Local Civil Rules 7.1 and 55.2.

## IV. Liability

### A. ADA Standing

Even on default, courts must determine whether a plaintiff has standing to bring his claims. *See Panarese v. Sell It Soc., LLC*, No. 19-CV-3211 (ARR)(RML), 2020 WL 4506730, at *2 (E.D.N.Y. July 2, 2020), *R&R adopted*, 2020 WL 4505703 (E.D.N.Y. Aug. 5, 2020). Standing requires "(1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate

threat of repeated injury." *Id.* (citing *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)) (internal quotations marks omitted). "[S]tanding is to be determined as of the commencement of suit." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *see also Azim v. Vance*, 530 Fed. App'x. 44, 46 (2d Cir. 2013).

In an ADA case, a plaintiff has standing at least "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [public accommodation] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler*, 731 F.3d at 187–88. The Second Circuit has found it reasonable to infer an intent to return where the plaintiff "avows a present intention to return [and that act] depends only upon his own volition, and the likelihood of which finds some support in professional and family reasons." *See Harty v. Simon Property Group, L.P.*, 428 Fed. App'x. 69, 72 (2d Cir. 2011).

Courts take "a broad view of constitutional standing [in ADA cases] because private enforcement suits are the primary method of obtaining compliance with the Act." *Brown v. Mermaid Plaza Assocs. LLC*, No. 13-CV-760 (AMD)(CLP), 2018 WL 2722454, at *6 (E.D.N.Y. Mar. 8, 2018) (internal quotations omitted).

Plaintiff has established standing. Plaintiff, while "in and out of places" and looking for somewhere to stay, visited the Website and was unable to determine whether he could book a room because the Website lacked information about the Hotel's accessibility features. *See Juscinska v. Paper Factory Hotel, LLC*, No. 18-CV-8201 (ALC), 2019 WL 2343306, at *1 (S.D.N.Y. June 3, 2019) (plaintiff had standing where she was unable to determine whether she could book a room for a stay-cation because of hotel website's non-compliance with relevant regulations). Plaintiff has stated his intention to return to the Website to determine whether he can rent a room at the Hotel. Because he is occasionally homeless, it is reasonable to infer an intent to do so. *See Camacho v. Vanderbilt Univ.*, No.

7

18-CV-10694 (KPF), 2019 WL 6528974, at *11 (S.D.N.Y. Dec. 4, 2019) (finding that plaintiff needed only to plausibly allege that he intended to return to defendants' website, not defendants' physical location, to survive motion to dismiss for lack of standing).

Several District Courts in the Second Circuit have recently questioned whether a Plaintiff acting solely as a "tester" of hotel websites, without any allegations of past or future plans even potentially to stay at the hotel, has standing to pursue an ADA claim for that hotel's website's violations of accessibility rules. *See, e.g.*, *Laufer v. Dove Hess Holdings LLC*, No. 20-CV-379, 2020 WL 7974268 (N.D.N.Y. Nov. 18, 2020); *Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020). Unlike those decisions, Plaintiff does not allege he is purely a tester, and has alleged specific facts that support that he was previously harmed when he tried to evaluate the hotel's accessibility features and likely to be harmed again when he visits the hotel's website in the future. Accordingly, he has established, for purposes of default judgment, his standing to pursue his claims.

### B. Liability Under the ADA

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The Act requires that the term disability "shall be construed in favor of broad coverage of individuals." *Id.* § 12102(4)(A). Title III of the ADA prohibits discrimination against individuals with disabilities in public accommodations. *Id.* § 12182.

To state a claim under Title III of the ADA, "a plaintiff [must] establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA." *Roberts v. Royal Atlantic Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

Plaintiff has clearly established the first two elements of a Title III claim. Plaintiff, a uniped who relies on a wheelchair or other mobility device, is disabled within the meaning of the ADA. 42

U.S.C. § 12102(1)-(2) (disability for purposes of the ADA includes "a physical ... impairment that substantially limits one or more major life activities," including "walking"). Defendants operate the Hotel, which along with "other place[s] of lodging," is a public accommodation under the ADA. *Id.* § 12181(7)(A).

Plaintiff also establishes that the Defendants' failure to include required accessibility information on the Website discriminated against him within the meaning of the ADA. ADA regulations require places of lodging to allow individuals with disabilities to make reservations for accessible rooms and "[i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii). The requirements "ensure that individuals with disabilities have the opportunity to 'reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms.'" *Juscinska*, 2019 WL 2343306, at *3 (quoting *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, No. 17-CV-14363, 2018 WL 3387679, at *4 (S.D. Fla. May 23, 2018)).

Through the Appendix to the regulations, the Department of Justice provides further interpretive guidance on the regulation, stating that because, "[a]s a practical matter, a public accommodation's designation of a guest room as 'accessible' will not ensure necessarily that the room complies with all [ADA requirements] ... specific information concerning accessibility features is essential to travelers with disabilities." 28 C.F.R. Part 36 App. A. Compliance with the regulations requires different disclosures depending on whether the hotel was built prior to or after the enactment of the ADA, and on whether the hotel generally complies with ADA standards. *See id.* At a minimum, however, all hotels must provide information about "the size and number of beds." *Id.* Hotels built after the enactment of and in compliance with the ADA should also include information about "the

9

general type of room ... the type of accessible bathing facility ... and communications features available in the room ...." *Id.* Hotels built before the ADA's enactment, meanwhile, "should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms." *Id.* The hotels are also directed to "provide information about important features that do not comply with the 1991 standards," and to have trained staff available to answer calls with questions from individuals with disabilities. *Id.*

Because Defendants' default constitutes a concession of all well-pleaded allegations concerning liability, the undersigned accepts that at the time Plaintiff filed his Complaint the Website had "no information about the room's accessibility features" and no information about the accessibility of hotel common areas. (Compl. ¶¶ 40–42.) In the absence of such accessibility information, the undersigned finds that Defendants failed to comply with the website reservation system requirement regulations, and therefore discriminated against Plaintiff.

### C.     Liability under the NYCRL, NYSHRL, and NYCHRL

Plaintiff's NYCRL, NYSHRL, and NYCHRL are based on the same allegations as his ADA claims. A plaintiff who establishes entitlement to default judgment under the ADA also establishes liability under the NYCRL, NYSHRL, and NYCHRL. *See Grinblat v. Apna Food & Oil Corp.*, No. 19-CV-6746 (EK)(LB), 2020 WL 7481508, at *5 (E.D.N.Y. Aug. 26, 2020), *R&R adopted*, 2020 WL 7481327 (E.D.N.Y. Dec. 18, 2020) (citing *Ross v. Royal Pizza Cafe Corp.*, No. 17-CV-6294 (FB)(RML), 2018 WL 6313208, at *4 (E.D.N.Y. Aug. 1, 2018), *R&R adopted*, 2018 WL 6313182 (E.D.N.Y. Dec. 3, 2018) (liability under the ADA also establishes liability under the NYCRL, NYSHRL, and NYSHRL). Because Plaintiff has established his entitlement to default judgment under the ADA, he has also done so under the NYCRL, NYSHRL, and NYCHRL.

## V. Requested Relief

### A. Injunctive and Declaratory Relief

"Title III of the ADA allows only for injunctive relief, not monetary damages." *Brown*, 2018 WL 2722454 at \*5. "[I]njunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12188(a)(2). "[T]he often-used method in this district for awarding injunctive relief in ADA cases is to require defendants to submit a compliance plan within a prescribed period of time." *Grinblat*, 2020 WL 7481508, at \*6.

Plaintiff seeks a declaratory judgment that Defendants discriminated against him, an injunction against continued discrimination, and an order requiring Defendants to bring the Website into compliance with 28 C.F.R. § 36.302(e)(1). (Compl. at 21; *see also* Dkt. 11-4 at 14.)[1] Because Plaintiff has established that the Website did not comply with ADA regulations, the undersigned respectfully recommends that the court grant Plaintiff's request for injunctive relief, enjoining Defendants from further discrimination and ordering Defendants to bring the Website into full compliance with ADA requirements. The Court recommends that Plaintiff's request for declaratory relief be denied as unnecessary in light of his entitlement to injunctive relief. *See, e.g.*, *Human Res. Research & Mgmt. Grp., Inc. v. County of Suffolk*, 687 F. Supp. 2d 237, 268 (E.D.N.Y. 2010) (finding declaratory relief unnecessary where injunction granted).

It is not clear, however, what changes must made to the Website. Plaintiff's counsel was asked during the telephone inquest "what your injunction is seeking, [and] where the gap is between what you're seeking and what is available now." (Inquest Tr. at 3:21-25.) Plaintiff's counsel responded that

---

[1] Plaintiff's Complaint makes passing reference to the 2010 ADAAG Standards, but Plaintiff fails to define those standards or which provisions of those standards the Website violates. Plaintiff also requests removal of the Website "from the internet until all necessary modifications are complete ..." (Dkt. 11-4 at 18.) Plaintiff did not request this relief in his Complaint, and the undersigned therefore respectfully recommends that this relief not be granted. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from ... what is demanded in the pleadings.")

11

"the complaint details what was lacking [from the Website] and I don't see that they satisfied that." (Inquest Tr. at 4:2-4.) In describing what was purportedly missing from the Website, Plaintiff's counsel stated that the Website needed to provide details on the accessible rooms' bathrooms, the accessibility of the guest rooms' doors, and the rooms' communication features. (Inquest Tr. at 6:17-25.) Plaintiff's counsel referred the undersigned to the text of 28 C.F.R. § 36.302(e) for additional requirements. (Inquest Tr. at 7:1-13.)

Upon review of the Website, which was incorporated into paragraph 37 of the Complaint and reviewed by Plaintiff's counsel at the inquest, the Hotel's homepage has a link at the bottom called "Accessibility" that provides at least some of the information referenced in the Complaint, 28 C.F.R. § 36.302(e) and the Appendix to Part 36. *See* http://henrynormanhotel.com/accessibility:



By contrast, the "BOOK NOW" section of the Website, where rooms are actually reserved, contains only an icon designating a room as accessible, with no specific information about the room's specific accessibility features:

12



The undersigned respectfully recommends that the Court issue an injunction prohibiting Defendants from discriminating against Plaintiff and order Defendants to take the steps necessary to bring the Website into compliance with the ADA as follows: (1) require Defendants to submit to Plaintiff's counsel an implementation plan that remedies the violations identified above within sixty days of any order adopting this report and recommendation; (2) grant Plaintiff thirty days from receipt of Defendants' plan either to consent or to seek further relief from the Court; and (3) direct Defendants to make the necessary changes within sixty days of Plaintiff's consent or any ruling on Plaintiff's request for further relief. *See Panarese v. Sell It Soc., LLC*, No. 19-CV-3211 (ARR)(RML), 2020 WL 4506730, at *4 (E.D.N.Y. July 2, 2020), *R&R adopted*, 2020 WL 4505703 (E.D.N.Y. Aug. 5, 2020) (recommending similar relief).

B. **Relief under the NYCRL, NYSHRL, and NYCHRL**

Plaintiff also requests compensatory damages, statutory penalties, fines, and punitive damages under the NYCRL, NYSHRL, and NYCHRL. (Compl. at 21-22; Dkt. 11-4 at 16, 18.)

1. *Compensatory Damages under the NYSHRL and NYCHRL*

Plaintiff seeks $1,000 in compensatory damages under the NYSHRL and NYCHRL. (Compl. at 21; Dkt. 11-4 at 16.) "Courts in this District and the New York City Human Rights Commission have deemed awards of $1,000 to be sufficient in cases where complainants did not establish any

13

particular damages other than what a decent and reasonable individual would suffer when faced with bad behavior" of the kind alleged here. *Grinblat*, 2020 WL 7481508, at *6 (internal quotations and alterations omitted). Accordingly, the undersigned respectfully recommends that Plaintiff be granted $1,000 in compensatory damages.

### 2. *Statutory Penalties under the NYCRL*

Defendants who violate the NYCRL are subject to penalties of "not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved" by those violations. NYCRL § 40-d. The statute requires plaintiffs to provide notice of their suit to the New York Attorney General. *Id.* Defendants violated the NYCRL, and Plaintiff served notice upon the attorney general. The undersigned recommends that Plaintiff be awarded statutory penalties of $500.

### 3. *Punitive Damages*

Plaintiff requested punitive damages in his Complaint. (Compl. ¶ 100, and at 22.) However, at the inquest, Plaintiff's counsel stated that he is only seeking $1,500 in compensatory and statutory damages and withdrew his request for punitive damages. (*See* Inquest Tr. at 11:7-10.) The undersigned therefore respectfully recommends that Plaintiff's punitive damages request be considered withdrawn.

### C.  Attorneys' Fees, Expenses, and Costs

Plaintiff requests attorneys' fees, expenses, and costs. (Compl. at 22; Dkt. 11-4 at 18.) The ADA provides for a discretionary award of a "reasonable attorney's fee, including litigation expenses, and costs" to a prevailing party. 42 U.S.C. § 12205.

### 1. *Attorneys' Fees*

The Second Circuit bases fee awards on the "presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009). Courts calculate the presumptively reasonable fee according to the "lodestar" method by "multiplying the number of hours reasonably billed ... by the appropriate hourly rate." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 n.4 (2d Cir. 2008).

The appropriate hourly rate is the rate a "reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County. of Albany*, 522 F.3d 182, 184 (2d Cir. 2007). Courts in the Eastern District use the "forum rule," in which courts "should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons*, 575 F.3d at 174 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110*, 119 (2d Cir. 2007)). In ADA cases in this district, "[t]he prevailing rates for attorneys ... are approximately $300-$450 per hour for partners ...." *Monge v. Glen Cove Mansion Hosp., LLC*, No. 18-CV-7229 (SJF)(SIL), 2020 WL 1666460, at *5 (E.D.N.Y. Apr. 2, 2020) (citing cases). Courts reserve the higher end of the fee range for attorneys with extensive subject matter experience. *See, e.g.*, *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 212 (E.D.N.Y. 2019) (awarding $425 rate for attorney with approximately 18 years of ADA litigation experience). Additionally, courts consider "the type of case presented, the nature of the litigation, [counsel's] experience, and the size of [counsel's] firm" when determining a reasonable rate. *Monge*, 2020 WL 1666460, at *6 (citing cases); *see also Feltzin*, 393 F. Supp. 3d at 213 ("the nature of the work in this case 'was not sufficiently complex or difficult to litigate as to justify a rate at the high end of the range of fees typically awarded.'") (quoting *John v. DeMaio*, No. 15-CV-6094 (NGG)(CLP), 2016 WL 7469862, at *7 (E.D.N.Y. Sept. 29, 2016)).

In determining a reasonable number of hours, district courts should "exclude excessive, redundant or otherwise unnecessary hours." *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).

Ultimately, "[t]he district court retains discretion to determine what constitutes a reasonable fee." *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation, citation, and alteration omitted). The party requesting fees must submit documentation to support its claims. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV)(VMS), 2016 WL 6585810, at *18 (E.D.N.Y. Sept. 30, 2016),

*R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

Plaintiff's counsel's memorandum of law in support of the Motion requests fees of $3,336.65 at an hourly rate of $385. ("Fee Statement", Dkt. 11-5 at 1–2; *see also* Dkt. 11-4 at 16–17.) Plaintiff's counsel's fee statement details 7.2 hours of work performed as of June 13, 2020, and states he will expend "three hours of additional time ... in review of the Court's Final Judgment and enforcement of same." (Fee Statement at 1–2.)[2] Plaintiff's counsel's stated hours multiplied by his requested hourly rate do not equal his requested fees. The total of 7.2 hours at $385 per hour would result in a total fee of $2,772.00, not $3,336.65 as stated on the Fee Statement. (*Id.* at 2.) Adding in the additional three hours of expected time noted in the request would increase that total to $3,927.00, a number that does not appear on the timesheet. Indeed, none of counsel's time entries are consistent with a fee of $385. (*See* Fee Statement at 1–2.) For example, Plaintiff's counsel requests payment for .05 hours of work on May 18, 2020, for "Order Reviewed" at $385 an hour. But instead of requesting $19.25 (.05 x $385), Plaintiff's counsel requests $32.08, which implies an hourly rate of $641.60.

The undersigned also notes that the Complaint is a boilerplate pleading that closely matches several other matters filed by the same counsel on behalf of the same Plaintiff in many cases filed in close succession in this district. *See, e.g.*, Complaints in *Chavez v. 214 Franklin LLC*, No. 20-CV-428 (RRM)(LB) (filed Jan. 26, 2020); *Chavez v. Feather Factory Hotel Inc.*, No. 20-CV-804 (EK)(RER) (filed Feb. 13, 2020); *Chavez v. 46 Nevins Street Associates LLC et al.*, No. 20-CV-977 (filed Feb. 22, 2020). The Motion for Default Judgment is also nearly identical to motions for default judgment in those matters. Additionally, counsel's suggestion that he anticipates spending three hours of additional time reviewing the Court's judgment and enforcing it is too speculative to justify any award for that time. In light of the above, the undersigned respectfully recommends that Plaintiff's 7.2 documented hours

---

[2] Plaintiff's counsel stated that he would not seek any additional fees for the second default judgment motion or for his appearance at the inquest. (Inquest Tr. at 10:3-7.)

be reduced to a more reasonable 5 hours.

Courts have also reduced hourly rates in non-complex ADA cases "commenced with the same boilerplate complaint used in" other similar ADA cases to $300, the lowest end of the fee scale. *See Monge*, 2020 WL 1666460, at *6. While Plaintiff's counsel was admitted to the bar in 1985, "the lack of any evidence supporting [counsel's] belief that [his] experience and efforts are consistent with those of other ADA attorneys who have been awarded" at the higher end of the hourly range, the boilerplate nature of the Complaint and Motion for Default Judgment, and counsel's incorrectly calculated fee statement lead the undersigned to conclude that $300 is a reasonably hourly fee. *See Monge*, 2020 WL 1666360, at *6. The undersigned therefore respectfully recommends that Plaintiff be awarded $1,500 for the 5 hours reasonably expended in this matter.

    2.  *Expenses and Costs*

"The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Monge*, 2020 WL 1666460, at *9 (quoting *Volpe v. Nassau County*, No. 12-CV-2416, 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)). Plaintiff seeks $647.33 in costs, comprised of $400 for the filing fee, $231.93 for service of process, and $15.40 for printing charges. (Fee Statement at 2–3; Dkt. 11-4 at 18; Inquest Tr. at 11:23-12:4.)

"Filing fees are recoverable without supporting documentation if verified by the docket." *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219 (E.D.N.Y. 2019). "Process server fees are also recoverable but must be supported by documentation." *Id.* Other costs must be supported by receipts or other documentation. *See id.* (denying undocumented request for photocopies, telephone charges, and mileage, parking, and tolls, among other things).

Plaintiff's filing fee is noted on the docket. (Dkt. 1.) Plaintiff's counsel provided documentation of the service charges. (Fee Statement at 3.) However, counsel failed to provide documents in support of the ECF or printing charges. The undersigned therefore respectfully

17

recommends that Plaintiff be granted costs and expenses of $631.93.

## CONCLUSION

Based on the foregoing, the undersigned recommends that a default judgment be entered against Defendants, and that the Court

> (a) issue an injunction prohibiting Defendants from discriminating against Plaintiff and (1) requiring Defendants to submit to Plaintiff's counsel an implementation plan that remedies the violations identified above within sixty days of any order adopting this report and recommendation; (2) granting Plaintiff thirty days from receipt of Defendants' plan either to consent or to seek further relief from the Court; and (3) directing Defendants to make the necessary changes within sixty days of Plaintiff's consent or any ruling on Plaintiff's request for further relief.
>
> (b) award Plaintiff $1,000 in compensatory damages under the NYSHRL and NYCRL, jointly and severally against both Defendants;
>
> (c) award Plaintiff $500 in statutory penalties under the NYCRL, jointly and severally against both Defendants;
>
> (d) award Plaintiff $1,500 in attorneys' fees and $631.93 in costs and expenses, jointly and severally against both Defendants;
>
> (e) deny Plaintiff's request for declaratory relief.

Plaintiff is directed to serve this Report and Recommendation on Defendants forthwith and file proof of service on the docket by March 1, 2020. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         February 24, 2021